JAMES W. NOEL et al., Appellants, v. LEES SUMMIT, Respondent.

Kansas City Court of Appeals, May 27, 1912.

1. PAVING: Repairs: Street Commissioner. Substitution of the paving of the principal part of a street for its entire length, with new paving, is not a repair, and is not authorized under the statute as to cities of the fourth class, to be made informally by the street commissioner or an improvement committee.

2. ———: ———: ———: Reconstruct: Statute. The word "reconstruct" ordinarily means to rebuild, to construct anew. But its meaning may be modified in a statute for street paving by being so connected with the word "repair," as to show it to be synonymous with or limited in meaning to that of repair.

3. ———: ———: ———: ———: Taxbills. A street more than one mile long, in a town of 1450 inhabitants, had been macada-

mized for fifteen years to a width of twenty feet at one part and thirty-two at another. It became worn away in the center and the improvement committee informally contracted the work of rebuilding it eight inches deep, to a width of fourteen feet at one part and twenty feet at the other, to a contractor who constructed it. *Held*, that this was not a repair as authorized by section 9411, Revised Statutes 1909, to be contracted for informally by the committee, and the taxbills issued against abutting property were invalid.

Appeal from Jackson Circuit Court.—*Hon. Walter A. Powell*, Judge.

REVERSED AND REMANDED (*with directions*).

*Paxton & Rose* for appellants.

(1) There is nothing in the claim that plaintiffs waived their rights by standing by and seeing the work done; jurisdictional matters, such as the preliminary resolution and an ordinance describing the work, cannot be waived. Keane v. Klansman, 21 Mo. App. 485; Bank v. Western, 68 Mo. App. 137; Parkinson v. Houlan, 182 Mo. 189. (2) The street and alley committee had no authority to do anything but fill holes made here and there in the street. It had no power to make a repaving under the guise of a repair. Clay v. Mexico, 92 Mo. App. 611. (3) The new work, although put down on the remains of the old macadam was macadamizing and repaving not a mere repair. Jones v. Plumber, 137 Mo. App. 337. (4) The new paving put down exceeded the thickness the remains of the old pavement on which it was placed, and therefore constituted a repaving, not a repair. Rackliffe v. Duncan, 130 Mo. App. 695.

*E. S. Bennett, T. J. Haekler* and *Pence & Sanford* for respondent.

(1) The street and alley committee did not need an ordinance from the board of aldermen to confer

authority, and if they did, the orinance of April 6, 1911, was sufficient. Sec. 9411 R. S. 1909; Fayette v. Rich, 122 Mo. App. 145. (2) The work was repair work. O'Meary v. Green, 25 Mo. App. 198. (3) The work was not reconstruction, but repair. Ritterskamp v. Stifel, 59 Mo. App. 510; Farrell v. Ramelkank, 64 Mo. App. 425; Perkinson v. Schnaake, 108 Mo. App. 255; Rackliffe v. Duncan, 130 Mo. App. 695; Jones v. Plummer, 137 Mo. App. 337. (4) The work being repair work, the taxbills would have been void, had the city proceeded by resolution, ordinance and letting of contract. Deming v. Const. Co., 154 Mo. App. 540. (5) The Legislature having conferred the authority on this committee, they were in the exercise thereof beyond the control of the court. Marionville v. Henson, 65 Mo. App. 397; Skinker v. Heman, 64 Mo. App. 441, 148 Mo. 349.

ELLISON, J.—Plaintiff seeks to cancel certain taxbills issued for repairing a street in Lees Summit, a town of the fourth class. The trial court refused his prayer and found for the defendants.

It appears that running through the town from north to south there is a street commonly called Douglas street, though in fact about one-fourth of its length is made up of Hearne avenue. The full length of the two, running as they do from the north to the south limits of the town, is near a mile and an eighth. These streets were macadamized in 1896, the Hearne avenue part twenty feet wide and the Douglas part thitry-two feet wide, both twelve inches deep. The street, thus paved, composed a part of a much traveled highway in going to and returning from places beyond, that attracted much of the public of the populous county of Jackson, in whic' Lees Summit is situated.

About fifteen years after this paving was completed it became so worn that the city council thought

Noel v. Lees Summit.

it proper to repair it and passed the following ordinance for that purpose: "That the authority is hereby granted unto the street and alley committee of the board of aldermen of said city to proceed to repair the macadam along and upon Douglas street in said city, from the northern limits of said city to the southern limits of said city, proceeding therein as provided by section 9411, Revised Statutes of Missouri 1909."

The provision of section 9411, referred to in this ordinance, is as follows: "No formality whatever shall be required to authorize the repairing of sidewalks, or of street or other paving, curbing, guttering, macadamizing, or part thereof, or reconstructing the same, and making assessments therefor; but the proper officer or committee on improvements may, without notice, cause such work to be done, keeping an account of the cost thereof, and reporting the same to the board of aldermen for assessment; and each lot or piece of ground abutting on such sidewalk, street, avenue or alley, or part thereof, shall be liable for its part of the cost of such work made along or in front of such lot or piece of ground, as reported to the board of aldermen. The board of aldermen may provide a penalty for failure to pay such special tax within a given time, and any taxbills issued in payment of such repairs shall constitute a lien upon the property liable therefor until paid."

Where a street is to be paved in a town of the class to which Lees Summit belongs, the statute requires that a resolution be first adopted and published by the city council declaring the paving necessary, so that objections, if any, may be made and heard. Then an ordinance is passed providing certain specifications for material and the manner of the work and the time in which it is to be done. Then a public letting is had and a contract let to the best bidder, etc. But in the matter of repair of a street, these formalities and safeguards to the interests of the propertyowner are dis

pensed with and there seems to be delegated to "the proper officer or committee on improvements," in this case the street and alley committee, authority, without formality or notice or other protection to the property-holder, of his, or its own motion, to make a contract and cause repairs to be made and to report the cost to the board of aldermen for assessment, the board issuing taxbills to the contractor. It will be noticed that this statute in connection with "repair" uses the word "reconstruct," and plaintiff has said that used in such connection it is synonymous with "repair." Whether so or not we need not say, since this proceeding from beginning to end is for the "repair" of the street. So the question for the court is, can the improvement in question be properly or fairly designated a repair of the street? The contest, as appeared from statements in argument, determines whether the abutting property or the town at large must pay for the work.

The evidence shows that in the central part of the street the macadam had been worn and wasted away by long usage, to within from two to six inches of the ground; and that it was relaid to the width of fourteen feet on the Hearne avenue part and twenty feet on the remainder, and of a depth of eight inches. The boundaries of the work were marked on each side by a plow, and when completed presented an even and uniform appearance the entire length, as though a new or repaved street. The cost of the work apportioned to the abutting property was $4025.90, and the time occupied in doing it was two months and ten days. Within the rules stated by the St. Louis Court of Appeals, in Jones v. Plummer, 137 Mo. App. 337, Ritterskamp v. Stifel, 59 Mo. App. 510, and Farrell v. Rammelkamp, 64 Mo. App. 425, and of this court in Rackliffe v. Duncan, 130 Mo. App. 695, the improvement was not repair work.

Noel v. Lees Summit.

We have a right to take notice that Lees Summit is a town of 1455 inhabitants, and it must strike one with some surprise that a single improvement or job of work, on one street, in a town of that size, costing $4025.90 and taking more than two months to perform, should be called a "repair." We concede that those things should not control a determination of the question, yet they naturally and properly are to be considered in coming to a conclusion. An answer to the question, what is repair, is difficult to state; perhaps a definition which, in all cases, would precisely determine what it is, could not be formulated. We can, however, with safety, state some element necessary to constitute repair; it must have an original upon which to rest. And though there may have been an original structure, the substitution of another like it at the same place, would not be a repair. Defendant cites us to O'Meara v. Green, 25 Mo. App. 198, to show what repair of a street is, but by reference to the same case, reported in 16 Mo. App. 118, we find the work there was "a little top dressing of sand and gravel and rolling it." We do not believe that the substitution of the chief part of a structure, as in this case, ought to be called repairing it. Nor do we believe the Legislature intended to give to a single minor town officer or committee, so important a power as that he may, in his own discretion, substantially rebuild at private contract an entire street, through the length of the municipality. That was what was done in this case. Defendant calls it a repair of the *center* of the street. In fact it was all the used part of the street and all of the paved portion except the outer edges, three feet on one part and six feet on the other, parts likely to remain unused and unworn. It was a repaving, in a certain width, of the entire street. There was no variation in the work, but an arbitrary width limit was established by lines marked out.

Although the entire proceeding was had under the authority to repair, and though counsel insist that the work was repair, yet they seem to desire whatever protection the word "reconstructing," as used in the statute, may give. The word "reconstruct," like most others, may have a different meaning in different connection, or as limited by express words. As written in this statute, we think it was evidently not used in its ordinary comprehensive sense, as is shown on the face thereof. We think it was used more in the restricted sense and as somewhat synonymous with the word "repairing," already used. For, further on, in authorizing taxbills and referring to them as issued in payment of the improvement, it reads "any taxbills issued in payment of such *repairs* shall constitute a lien," etc.; thus not making any distinction between repair and reconstruction work. To reconstruct ordinarily means to rebuild, to construct again (Farraher v. City of Keokuk, 111 Ia. 310; Contas v. Bradford, 206 Pa. 291, 295), and if we allow that meaning to the statute we would have the safeguards thrown around public work confined to its *original* construction; that is, that a street once paved, though worn out or otherwise destroyed, might be replaced continuously at the instance of a street commissioner, regardless of the wish of the property owners and without any means for their protection. The manifest reason for allowing street repairs and reconstruction made at the instance of the street commissioner, without the usual formality requisite to street paving, is that the nature of such work and the requirement therefor becames apparent at irregular times and in comparatively small ways, both in extent and cost. It was more practical to leave such matters of keeping the street in condition, to a street commissioner, as the necessity would show itself from time to time. It was never intended that he should construct a new work. It would be an unreasonable construction of the statute

to say that the first part showed such solicitude for the protection of the property holder as to require action of the board of aldermen, publication of notices, right of remonstrance, estimates, plans and specifications, and a public letting of the work, and then that it should be immediately followed, in the latter part, by words doing away with all this when the street was to be rebuilt or again be constructed.

The judgment is reversed and the cause remanded, with directions to enter judgment for the plaintiffs. All concur.