## CITY OF COMMERCE et al. v. SOUTHERN RY. CO.

Circuit Court of Appeals, Fifth Circuit.
October 31, 1929.

No. 5547.

E. C. Stark, of Commerce, Ga., and Grover Middlebrooks and W. Colquitt Carter, both of Atlanta, Ga. (Bryan & Middlebrooks, of Atlanta, Ga., on the brief), for appellants.

Sanders McDaniel, of Atlanta, Ga., and A. C. Wheeler and E. D. Kenyon, both of Gainesville, Ga., for appellee.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

BRYAN, Circuit Judge. The Southern Railway Company, a Virginia corporation, filed a bill in the federal District Court to enjoin the city of Commerce, a Georgia municipal corporation, from enforcing the collection of an assessment for street paving against the railway company's abutting land. A preliminary injunction, pending final hearing, was issued as prayed; and the city appeals.

The city's charter authorized it to require by ordinance the paving of streets, and to assess and collect two-thirds of the cost thereof out of abutting real estate; and on February 21, 1928, an ordinance was passed providing for the paving of Elm and Broad streets. The assessments for two-thirds of the cost of paving, according to the front foot rule, were approved by the city council as to Elm street on May 21, and as to Broad street on June 7, 1928. It appears that the railway company before the improvements were undertaken filed with the city and the contractor a protest in writing against the assessment of any part of the cost of paving against it, but the protest itself was not incorporated in the record, and so its nature and character are not shown. The company's protest was denied by the city, and its property abutting Elm street was assessed $9,925, and that abutting Broad street $12,655. This suit was filed on July 7, 1928.

Generally speaking, Elm and Broad streets were on the original 100 foot right of way of the railway company, one on one side and one on the other, with a narrow strip averaging 10 to 15 feet between the cross-ties and the street curb on each side. As was well stated by the District Judge in his opinion: "There is really one broad street with a railway track down the middle of it, except that the railway seems to own what is left of this land after the streets have been taken from the right-of-way." A few portions of the original right of way between the street curb and the railway track, especially near the depot, are deep enough for business use, but otherwise the narrow strip of land on each side of the railroad track is incapable of such use, or of being benefited by the improvement of the streets upon which it fronts. The frontage of the strip on Elm street was 7,320 feet and that on Broad street 4,726 feet, and it is the collection of the assessment on these strips, according to the front foot rule, that is temporarily enjoined. The validity of the assessment in so far as it affects the company's abutting property of any appreciable depth was a question that was reserved for final

hearing. The lots opposite the railroad on each street, so far as appears, were of sufficient depth to be substantially benefited.

The city contends that this suit ought not to be entertained by a court of equity, because the city charter gives to the railway company the right to contest the assessment for paving by filing an affidavit of illegality, which would take the case for determination into the state court. It is possibly true that by pursuing this method the company could get the case into the state court, Laws Ga. 1909, p. 686 (section 63); and then remove it to the federal court. Notwithstanding this, we are of opinion that the company had the right to come initially into a federal court of equity, if for no other reason, because, under the facts of this case, the assessment which purported to create a lien upon its property, thereby placed a cloud upon its title, and thus afforded a distinct and well-recognized ground of equitable jurisdiction. Dows v. City of Chicago, 11 Wall. (78 U. S.) 110, 20 L. Ed. 65; Ogden City v. Armstrong, 168 U. S. 224, 238, 18 S. Ct. 98, 42 L. Ed. 444; Smyth v. Ames, 169 U. S. 466, 516, 18 S. Ct. 418, 42 L. Ed. 819.

The city also insists that the company is estopped to object to the collection of the assessment, because of its failure to enjoin the assessment before the cost of the paving became a fixed liability. It is argued that one cannot stand by, accept the benefits of an improvement, and then later seek to avoid payment of his fair share of the cost. But it seems to us that the company was diligent in asserting its rights. Before the improvements were begun, it made its objections known and placed them upon record, and within a reasonable time brought this suit; so it cannot be said that the city proceeded with the paving in the belief that the company would voluntarily pay the assessment against it. Several Georgia cases are cited to the effect that a mere protest against, or threat to take legal steps to prevent, street improvements, is not sufficient to prevent an estoppel, but an examination of the cases cited discloses that the nature of the protest did not appear. We cannot say that the protest in this case was insufficient, for the reason that the city has failed to incorporate it in the record, and we therefore assume that the city was put upon notice of the position taken by the company. It cannot well be contended that the company was obliged to bring suit to enjoin the assessment against it before the paving was begun, since, under the charter provision relied on to sustain the contention that an adequate remedy at law existed, an abutting property owner, by an affidavit of illegality, could contest the validity of an assessment made against his property after the paving was completed.

On the merits of the case there is little need for discussion. Assessments for street paving according to the front foot rule have generally been upheld, because usually the cost does not exceed the benefit, and it is practically impossible to secure absolute equality in the distribution of the cost, or to prevent particular cases of hardship. French v. Barber Asphalt Paving Co., 181 U. S. 324, 21 S. Ct. 625, 45 L. Ed. 879; Louisville & N. R. R. Co. v. Barber Asphalt Paving Co., 197 U. S. 430, 25 S. Ct. 466, 49 L. Ed. 819; Gast Realty Co. v. Schneider Granite Co., 240 U. S. 55, 36 S. Ct. 254, 60 L. Ed. 523. But, where a particular assessment is confiscatory, or is out of all proportion to the benefit received by an abutting property owner, it violates due process clause of the Fourteenth Amendment, and is not saved by adherence to the front foot rule. City of Atlanta v. Hamlein, 96 Ga. 381, 23 S. E. 408; Village of Norwood v. Baker, 172 U. S. 269, 19 S. Ct. 187, 43 L. Ed. 443. In this case the company's property which was not appreciably benefited was assessed equally with property on the other side of each street which received practically all the benefits resulting from the paving. The unfairness and injustice of applying the front foot rule of assessments to the whole of the railway company's property is manifest. We do not mean to say that the District Judge cannot on final hearing in this proceeding sustain assessments against such portions of the company's abutting property as are of sufficient depth to be substantially benefited.

The decree is affirmed.